UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:04-CR-672 (CEJ) ) |
| MATTHEW BANNER, | ) ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Pursuant to 28 U.S.C. § 636(b), the Court referred all pretrial matters in this case to United States Magistrate Judge Terry I. Adelman for determination and recommended disposition, where appropriate. On March 15, 2005, Judge Adelman issued a Memorandum, Order and Recommendation with respect to the disposition of the motions filed by defendant Matthew Banner to dismiss Count I of the superseding indictment, to strike surplusage from the original indictment, and to suppress statements. The defendant has filed objections and, therefore, the Court is required to review de novo the proposed findings and recommendations of the Magistrate Judge as to which objections have been made. See 28 U.S.C. §636(b)(1).

**I. Motion to Dismiss Count I**

In Count I of the superseding indictment, defendant Banner is charged with attempting to transport child pornography through

the Internet, in violation of 18 U.S.C. §§ 2 and 2252A(a)(1). The defendant argues that Count I should be dismissed because it fails to allege a crime and is therefore invalid on its face.

The defendant has not identified any specific deficiency in the in the pleading of Count I. Indeed, Count I tracks the language of § 2252A(a)(1) in that it alleges that the defendant "knowingly attempted to transport and caused to be transported in interstate commerce via the Internet, from Missouri to Norway, by means of a computer, graphic image files containing child pornography," and thereafter describes specifically the image files that the defendant attempted to transport. Count I contains "a plain, concise and definite written statement of the essential facts constituting the offense[s] charged," and thereby complies with the pleading requirements of Rule 7(c)(1)of the Federal Rules of Criminal Procedure. The Court finds that the allegations of Count I are sufficient to inform the defendant of the charge and to enable him to defend against it or plead double jeopardy as a bar. See Hamling v. United States, 418 U.S. 87, 117 (1974). Thus, the Court concludes that Count I is facially valid. The defendant's motion to dismiss will be denied.

**II. Motion to Suppress Statements**

According to the testimony presented during the suppression hearing, Special Agent John Taylor of the Immigration and Customs Enforcement Service along with other agents went to Banner's home

on October 15, 2004 for the purpose of executing a search warrant. They arrived around 10:00 a.m., and after obtaining entry, they found Banner, who had just arisen, upstairs. With their firearms drawn, the agents ordered Banner to raise his arms and return to the room from which he had come. Upon determining that there were no other occupants and that the residence was safe, the agents put away their weapons. Banner was instructed to get dressed and after doing so, he and the agents went into the downstairs den.

The agents identified themselves and told Banner that they were there to execute a search warrant for child pornography. Agent Taylor told Banner that he was not under arrest and that he was free to leave the house at any time. Banner, however, chose to stay. He testified that he made this decision because he was frightened, because of the number of law enforcement officers present, and because he didn't trust the officers.

While the search was being conducted, Banner was not handcuffed or physically restrained in any way. On several occasions he asked to leave the den to get water or to go to the bathroom. Banner testified that he was never denied permission to do anything that he requested. He also testified that he never told the agents that he wanted to leave the house, he never attempted to leave, and the agents never prevented him from leaving.

Agent Taylor and one other agent sat with Banner in the den where they talked to him about sports and school in addition to questioning him about matters relating to their investigation. Agent Taylor testified that he told Banner that he did not have to answer their questions. Banner testified that he was never told this and that he felt that he had to answer the questions. Banner further testified that throughout the encounter he was treated courteously, and he described the conversation with the agents as cordial.

Banner testified that early in the interview he asked if he could call his father, and was told by Agent Taylor that he could. However, according to Banner's testimony, Agent Taylor stated that he wanted to ask some more questions first. Approximately 30 minutes after the agents had arrived, Agent Taylor asked Banner if he would be willing to provide a written statement of what he had already told the agents. Agent Taylor read the <u>Miranda</u> warnings to Banner, and Banner stated that he understood them. At that point, Banner again asked to call his father and did so. After talking to his father, Banner told the agents that his father had consulted an attorney and that he had been advised him not to make a written statement. The agents told Banner that that was fine with them, and shortly thereafter they left the house.

Banner asserts that statements he made to the agents should be suppressed. He argues that the agents subjected him to a

custodial interrogation without advising him of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). It is undisputed that Agent Taylor did not give the Miranda warnings to Banner before the questioning began. However, such warnings are required to be given only during custodial interrogations. Miranda, 384 U.S. at 478-79. The issue before the Court is whether the interview of the defendant was custodial, that is, whether "there was a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." Stansbury v. California, 511 U.S. 318, 321 (1994)(per curiam). In determining this issue, the Court considers whether the objective circumstances were such that a reasonable person would believe that he was not free to leave. See Berkemer v. McCarty, 468 U.S. 420, 442 (1984); United States v. LeBrun, 363 F.3d 715 (8th Cir. 2004)(en banc). Thus,

> The "ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (per curiam) (internal marks omitted). "Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." Thompson [v. Keohane], 516 U.S. [99] at 112, 116 S.Ct. 457 [(1995)] (footnote omitted). Thus, the critical inquiry is not whether the interview took place in a coercive or police dominated environment, but rather whether the defendant's "freedom to depart was restricted in any way." [Oregon v.] Mathiason, 429 U.S. [492] at 495, 97 S.Ct. 711 [(1977)]. In answering this question, we look at the totality of the circumstances while keeping in mind that the determination is based "on the objective

>     circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Stansbury v. California, 511 U.S. 318, 322- 23, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994).

LeBrun, 363 F.3d at 720.

The facts of this case lead the Court to conclude that Banner was not in custody at any time during the encounter with the agents on October 15, 2004, such that there was no requirement that he be given the Miranda warnings before being questioned. The encounter took place at Banner's residence during the execution of a search warrant.  Before any questioning began, Banner was told that he was not under arrest.  The agents did not physically restrain him.  After determining that the premises were safe, the agents put away their weapons.  Moreover, Banner admitted that he was told that he could leave the house at any time and that no agent ever prevented him from doing so.  Although he testified that he felt he could not leave, the Court's focus is on the objective circumstances of the interrogation, not on Banner's subjective views.  Id.  Under the totality of circumstances, a reasonable person would not believe that he was not free to terminate the interview and leave.  Id.

Additionally, Banner's testimony that he felt compelled to answer the agents' questions is inconsistent with his testimony that he was told that he was free to leave.  Certainly, if he knew that he did not have to remain at the house he must have known

that he did not have to speak to the agents.  At all times, the agents treated Banner with courtesy, their conversation with him was cordial, and they never denied any request that he made, including his request to call his father.  Once Banner stated that an attorney had advised him not to give a written statement, the agents ceased questioning him and left the house.  There is no evidence that the agents employed threats or coercion or that Banner's will was overborne in any way.  Id. at 724.  The Court, therefore, concludes that Banner's statements to the agents were made voluntarily and should not be suppressed.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Report and Recommendation of United States Magistrate Judge Terry I. Adelman is sustained, adopted, and incorporated herein.

**IT IS FURTHER ORDERED** that the motions of defendant Matthew Banner to dismiss Count I of the indictment [Doc. #15 and #26] and to suppress statements [Doc. #14] are **denied**.

```
                                 _____
                                 CAROL E. JACKSON
                                 UNITED STATES DISTRICT JUDGE
```

Dated this 25th day of May, 2005.